```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION


UNITED STATES OF AMERICA,          )
                                   )
            Plaintiff,             )
                                   )
      v.                           )     No. 4:07 CR 224 HEA
                                   )                     DDN
RAYMOND LAMONT SHAW,               )
                                   )
            Defendant.             )
```

**ORDER AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This action is before the court upon the pretrial motions of the parties which were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). An evidentiary hearing was held on June 5, 2007.

Defendant Raymond Lamont Shaw has moved to suppress evidence and statements (Docs. 14 and 20), and the government has orally moved for a hearing on suppression issues (Doc. 15).

From the evidence adduced at the hearing, the undersigned makes the following findings of fact and conclusions of law:

**FACTS**

1. On March 1, 2007, at approximately 12:30 a.m., St. Louis Metropolitan Police Detective Kenneth P. Kerrens was assigned to the Crime Suppression Unit and on patrol. At that time he was near the intersection of Delmar and Euclid when he received a radio call from Det. Trim who was also in the Crime Suppression Unit. Trim reported that the vehicle that he and two other detectives in the unit were using was just struck by gunfire in the 5500 block of Labadie and that he was returning fire. Det. Trim saw the shooter standing in the middle of the street. Det. Kerrens and his partner who were about nine blocks from the area of the shots, responded to the call. Approximately 30 seconds later, while they were en route, they heard a second radio call, from Det. Mueller, that shots were being fired near the intersection of Labadie and St. Louis Avenue. The caller described two subjects, the

first as a black male, later identified as Raymond Lamont Shaw, who was wearing a black hooded sweatshirt with orange writing on the front; and the second subject was described as a black male, later identified as Rickey Mull, wearing a white coat.  The officer radioed that the second subject fired five shots at them.  Next, Det. Kerrens heard a radio call from Det. Trim that he was shot at and that he was returning fire.  Det. Martin reported by radio that the subject wearing the dark hooded sweatshirt with writing on the front just fired two shots at him.  Det. Kerrens and his partner went to the 5500 block of St. Louis Avenue, because they heard that officers were in foot pursuit of the two shooters in that area.  Det. Mueller reported by radio that a subject had kicked in a rear door of a garage and was hiding inside it; the garage was located on the alley at the rear of 5518 St. Louis Avenue.  Kerrens and his partner parked and went to that garage.  The firing of the gunshots at the officers, the flight, and the arrest of Raymond Lamont Shaw occurred within approximately four or five blocks.  <u>See</u> Gov. Exs. 1-12.

     2.    Det. Kerrens entered the garage and saw that Dets. Mueller and Panhurst had arrested and handcuffed a black male who was wearing a dark hooded sweatshirt with orange lettering.  The subject was later identified as Raymond Lamont Shaw.  Shaw was laying face down.  Dets. Trim and Martin arrived and told Det. Kerrens that the arrested Raymond Lamont Shaw was the person who had shot at them.

     3.    Det. Kerrens got Shaw to his feet and immediately advised him orally from memory of his constitutional rights to remain silent and to counsel.  He asked Shaw whether he understood his rights and Shaw responded in the affirmative.  Without being questioned, Shaw spontaneously asked Det. Kerrens whether his black cell phone had been found.  Det. Kerrens told Shaw that the police found the phone.  Shaw asked whether he could have it and the officer said the police were keeping it.  Kerrens then gave custody of Shaw to two other officers.  Shaw did not appear to be intoxicated, under the influence of any narcotics, or in any mental distress.  No promise, threat, or coercion was used to cause Shaw to ask the question about the cell phone.  Shaw made no statement about the firearm.

4. Dets. Kerrens and Mueller searched the route of Shaw's flight and about a half-block from the garage found on the ground a discarded .25 caliber pistol and a cell phone, which were seized. See Gov. Exs. 8, 13. Dets. Martin and Trim identified the found pistol as similar in color and size to the one used against them. Shaw threw down the pistol and the cell phone during his flight from the officers so that the items could not be used as evidence to prove he was the shooter.

5. At the police station the officers seized as evidence the dark hooded sweatshirt that Shaw wore during the incident.

6. On March 1, 2007, Rickey Mull gave the police a written statement that he was with Raymond Lamont Shaw when Shaw fired the shots at the police, thinking they were people with the person he had just had an argument with. Def. Ex. A.

## **DISCUSSION**

The subject matter of the motions to suppress are the statements made by defendant, the cell phone, and the pistol recovered by the police.

First, the arrest of defendant without a warrant was lawful. Under the Fourth Amendment, a person reasonably may be arrested without a warrant, if the arresting police have probable cause. Beck v. Ohio, 379 U.S. 89, 91 (1964). Probable cause to arrest without a warrant exists when the police have information sufficient to cause a reasonable person to believe that the subject had committed an offense or was then committing an offense. Id. This determination does not depend on individual facts, but depends on the cumulative effect of the facts in the totality of the circumstances. United States v. Brown, 49 F.3d 1346, 1349 (8th Cir. 1995). "[I]n combination with other facts and circumstances, flight from an officer may create probable cause where the defendant persistently attempts to evade capture." United States v. Wallace, 102 F.3d 346, 348 (8th Cir. 1996) (quoting United States v. Wadley, 59 F.3d 510, 512-13 (5th Cir. 1995)).

In the totality of the circumstances presented by the evidence during the hearing, the police arrested defendant after he had been seen breaking into a garage in the middle of the night, within four or five

blocks of where someone fired shots at the police, after police pursued two subjects who had fired several shots at them, and where one of the shooters was described as a black male wearing clothing similar to the clothing worn by defendant when arrested in the garage. With these facts a reasonable person could conclude that defendant was one of the men who fired shots at the police. His arrest was lawful.

The clothing defendant wore when arrested was lawfully seized by the police without a warrant because it was seized incident to his lawful arrest. United States v. Edwards, 415 U.S. 800 (1974) (clothing taken from arrestee at police station is seized incident to the arrest).

Defendant's statements should not be suppressed. The government has the burden of establishing the constitutional admissibility of defendant's statements by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 169 (1986). The admissibility of a defendant's statements depends upon whether the statements were constitutionally voluntary, id.; and, if the statements are made during police interrogation while the defendant was in custody, whether the defendant had been advised of his rights, as prescribed by Miranda v. Arizona, 384 U.S. 436 (1966); and, if so, whether the defendant knowingly and voluntarily waived the Miranda rights, North Carolina v. Butler, 441 U.S. 369, 373, 375-76 (1979).

Defendant's statements were all constitutionally voluntary, because they were not the result of government overreaching, such as mental or physical coercion, deception, or intimidation. Colorado v. Connelly, 479 U.S. at 169-70.

The statement made by defendant regarding the cell phone should not be suppressed, because it was made after he had been advised of his Miranda rights and because it was not made in response to interrogation, but was spontaneously made. United States v. Menteer, 350 F.3d 767, 770 (8th Cir. 2003), cert. granted and judgment vacated, 544 U.S. 916 (2005), opinion reinstated, 408 F.3d 445 (8th Cir. 2005).

The cell phone and the pistol should not be suppressed as evidence. The pistol was identified as being similar to the one used by the shooter to fire at the police, the pistol and the cell phone were found near each other and in the route of defendant's flight from the police,

and defendant asked about the cell phone.  Therefore, the court finds that these items were thrown down by defendant in his flight from the police intentionally to relinquish their illegal relationship to him. A person who throws away an object under these circumstances has abandoned any protectible Fourth Amendment interest in the item. <u>California v. Hodari D.</u>, 499 U.S. 621, 629 (1991); <u>United States v. Simpson</u>, 439 F.3d 490, 494 (8th Cir. 2006).  Therefore, defendant has no standing to complain about the acquisition of this evidence by the government.

For these reasons,

**IT IS HEREBY ORDERED** that the motion of the government for a hearing on suppression issues (Doc. 15) is denied as moot.

**IT IS HEREBY RECOMMENDED** that the motions of defendant to suppress evidence and statements (Docs. 14 and 20) be denied.

The parties are advised they have ten days, to file written objections to this Order and Recommendation.  The failure to file objections may result in a waiver of the right to appeal issues of fact.

### ORDER SETTING TRIAL DATE

As directed by the District Judge, this matter is set for a jury trial on the docket commencing August 6, 2007, at 9:30 a.m.

/S/ David D. Noce
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on June 18, 2007.